UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA HALL,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 3,<br><br>    Defendant. | Case No. 20-cv-07076-JD<br><br>**ORDER RE SUMMARY JUGMENT**<br><br>Re: Dkt. Nos. 29, 31 |

Plaintiff Cassandra Hall filed this ERISA action for long-term disability (LTD) benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). The complaint alleges that defendant AT&T Umbrella Benefit Plan No. 3 (the Plan) had accepted and paid a claim for LTD benefits for two years, and then terminated the benefits based on a paper review of her medical files.[1] Dkt. No. 1. Hall returned to work, and seeks benefits for a relatively short period of time between the termination decision and resuming her job. She asks for judgment under Federal Rule of Civil Procedure 52, or alternatively for summary judgment under Rule 56. Dkt. No. 29. The Plan opposes the motion and appears to ask for summary judgment in its favor, although the parties were expressly advised that the Court does not permit duplicative cross-motions in ERISA cases. Dkt. No. 29 (opposition); Dkt. No. 21 (minute order). Hall did not file a reply in support of her motion.

The Court's practice is to resolve benefits disputes under Rule 56, and so the Rule 52 motion is terminated. Summary judgment is granted in favor of the Plan.

---

[1] Hall named AT&T Umbrella Benefit Plan No. 1 as defendant in her complaint, but effective January 1, 2014, AT&T Umbrella Benefit Plan No. 3 is the operative, successor plan. Dkt. No. 31-1 (Siegel Decl.) ¶ 2.

**BACKGROUND**

The salient facts are undisputed. The benefits agreement is the amended and restated AT&T Umbrella Benefit Plan No. 3, dated January 1, 2018. Administrative Record (AR) 001.[2] The parties agree that the Plan delegated administrative authority to the plan administrator, AT&T Services, Inc., which in turn delegated that authority to Sedgewick, a third-party claims administrator. Dkt. No. 29 at 5-6; Dkt. No. 31 at 6. Sedgewick resolves claims and appeals for the Plan through the Integrated Disability Service Center (IDSC). An employee is considered disabled for purposes of LTD benefits when she has "a sickness, injury or other medical, psychiatric or psychological condition that prevents [her] from engaging in any occupation or employment for which [she is] qualified or may reasonably become qualified based on training, education or experience." AR 071.

IDSC approved short-term disability (STD) benefits for Hall, and then approved LTD benefits beginning June 4, 2017, after the STD benefits expired. AR 410, 430. Hall, who worked as a testing technician for AT&T, was diagnosed with "an impingement and acromioclavicular arthropathy with labral tear" in her right shoulder, which prevented her from being able to work at a computer, as her job required. AR 306, 390. After two corrective surgeries in May 2017 and March 2018, and two rounds of physical therapy, the range of motion in her right shoulder improved significantly. AR 222.

The administrative record indicates that Hall was last seen by physicians in July and September 2018. In July 2018, Hall reported to Dr. Renbaum that she had "improved motion of the right shoulder following recovery from the surgery" but claimed she still "had no change in her pain or function." AR 222. Dr. Renbaum opined that Hall's reported pain level was "in excess of that normally associated with this diagnosis and condition." AR 226. Dr. Renbaum's inspection of Hall's cervical spine revealed "normal contour" and a full range of motion. AR 223-24. Even so, Dr. Renbaum concluded that Hall was "not capable of performing her regular work activities," finding she was "precluded from reaching at or above shoulder height with the right upper

---

[2] All AR citations are in Dkt. No. 30.

2

extremity, from lifting over fifteen pounds, and from repetitive flexion or extension of the cervical spine." AR 226.

In September 2018, Hall was seen by Dr. Roth, her primary treating physician. AR 216. Dr. Roth noted that Hall reported "pain and tingling" in her right arm "despite normal electrodiagnostic testing" and observed some tenderness in her shoulder and trapezius. *Id.* Dr. Roth also observed that an MRI of Hall's cervical spine "was normal for age," and noted that Hall exercises. *Id.* Dr. Roth reported that Hall had a normal "[r]ange of motion of right shoulder: flexion and abduction 170°." *Id.* Dr. Roth's diagnostic impression was "right hand sprain/strain. Cervical sprain/strain. MRI of the cervical spine and electrodiagnostic testing were normal." AR 217. Dr. Roth directed a "follow up in two months," but there is no evidence that this ever occurred. *Id.*

After paying LTD benefits for approximately two years, IDSC denied further payments on May 1, 2019. AR 305-307. The denial was based on a review of Hall's medical records by Dr. Heck, a physician advisor hired by IDSC, and a "Transferrable Skills Analysis completed by a Certified Rehabilitation Consultant." AR 306. Although Dr. Heck did not personally examine Hall, he attempted to contact Hall's primary treating physician, Dr. Roth, who never returned his call. *Id.* After reviewing Hall's file, Dr. Heck concluded that "there [are] no objective findings to support the diagnosis of cervical sprain/strain. There is no report of injury despite the employee's right shoulder and trapezius tenderness noted on physical examination." AR 333. Dr. Hall found that "the diagnoses do not impact the employee's overall function" and that "there are no required restrictions or limitations to the employee's regular job duties." AR 333. IDSC's denial letter cited Dr. Heck's report, and concluded that "[c]linical information does not document a severity of your condition(s) that supports your inability to perform any occupation as of May 1, 2019." AR 306. The denial letter invited Hall to "submit additional medical or vocational information" should she choose to appeal. AR 307.

Hall appealed the denial, but did not submit any new medical records or other information. For the appeal, IDSC retained Dr. Swamy to conduct another review of Hall's records. Dr. Swamy did not personally examine Hall, but "all available medical documentation was


reviewed." AR 273. Dr. Swamy attempted to discuss Hall's prognosis with Dr. Roth, but Dr. Roth informed her that she had "retired in June 2019 and refuse[d] to participate in a disability peer to peer." AR 272. After reviewing the records, Dr. Swamy found that Hall was "not disabled" because she had had "a full range of motion in the shoulder," with "normal flexion and abduction" and "[s]he has not been seeing any physicians since 2018." AR 278. Dr. Swamy concluded that "due to the lack of any severe findings," Hall "is not disabled . . . as of 5/1/19 through present." *Id.* In addition to this report, IDSC again relied on the transferable skills analysis, which identified four alternative occupations Hall could perform. AR 263. IDSC denied Hall's appeal. *Id.*

Hall returned to work in May 2021. Dkt. No. 29 at 6. She seeks retroactive benefits only for the period between the denial in May 2019 and May 2021. *Id.*

## DISCUSSION

### I. LEGAL STANDARDS

Under ERISA, a participant in an employee benefit plan may bring a civil action to recover benefits claimed to be due. 29 U.S.C. § 1132(a)(1)(B). "In the ERISA context, 'a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 16-CV-01413-JD, 2018 WL 1258147, at *3 (N.D. Cal. Mar. 12, 2018) (quoting *Harlick v. Blue Shield of California*, 686 F.3d 699, 706 (9th Cir. 2012)). A *de novo* standard of review will apply to actions for the recovery of ERISA benefits, unless the plan in question grants discretionary authority to the trustee or fiduciary. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989). If a plan unambiguously grants the plan administrator discretionary authority to construe the plan's terms, the appropriate standard of review is for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506 (2010)).

4

The parties agree that the abuse of discretion standard applies here. *See* Dkt. No. 29 at 5-6; Dkt. No. 31 at 11-12. Because administrative authority is delegated to Sedgewick, which acts through IDSC, no structural conflict of interest exists, and the abuse of discretion standard need not be "tempered with a degree of skepticism." *Dimry*, 2018 WL 1258147, at *3. Hall does not contend otherwise.

When, as here, there is no conflict, "judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard. In these circumstances, the plan administrator's decision can be upheld if it is grounded on *any* reasonable basis . . . the existence of a single persuasive medical opinion supporting the administrator's decision can be sufficient to affirm, so long as the administrator does not construe the language of the plan unreasonably or render its decision without explanation." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629-30 (9th Cir. 2009) (original emphasis) (internal quotations and citations omitted). The Court will consider case-specific factors such as "the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered a contrary [Social Security Administration (SSA)] determination, if any." *Id.* at 630 (cleaned up).

## II. IDSC DID NOT ABUSE ITS DISCRETION

On the record before the Court, Hall has not demonstrated an abuse of discretion by IDSC. The decision to reverse course and deny benefits was based on a good faith and reasonable review of all available medical records, which indicated that Hall's shoulder had improved with treatment. It was also not unreasonable for IDSC to find that Hall's "cervical spine sprain/strain" diagnosis failed to support a claim for LTD benefits, because this condition was unsupported by objective medical evidence. Tests showed her cervical spine was normal.

Hall's main claim is that IDSC relied excessively on paper reviews of her records by the physician advisors it retained (Dr. Heck and Dr. Swamy), and unduly slighted the reports of Hall's treating physicians (Dr. Renbaum and Dr. Roth). *See* Dkt. No. 29 at 6-7. It is certainly true that a

benefits decision based purely on a records review by plan-retained physicians may "raise questions about the thoroughness and accuracy of the benefits determination." *Montour*, 588 F.3d at 634 (cleaned up). But the record here does not provoke concerns. The physicians retained by IDSC took into account the treating physicians' records and determined, based on the content of those records, that Hall's condition had improved. For example, Dr. Renbaum, who examined Hall for her workers' compensation claim, found that Hall had "improved motion of the right shoulder following recovery from the surgery" and that her reports of pain were "in excess of that normally associated" with her condition. AR 222, 226. An examination of Hall's right shoulder revealed that the "range of motion of the right shoulder is full with flexion and abduction to 180 degrees, extension and adduction to 50 degrees, internal and external rotation to 90 degrees." AR 224. Dr. Renbaum also found Hall's cervical spine revealed "normal contour" and had a full range of motion. AR 223-224. Dr. Roth determined that electrodiagnostic testing of Hall's right arm was "normal," despite her reports of pain and tingling, and that the most recent MRI of Hall's cervical spine was "normal for age." AR 216-217. It also bears noting that it appears that Hall stopped seeking medical treatment for her condition after the September 2018 visit with Dr. Roth. She never supplemented the record with more recent records for IDSC to consider, despite Dr. Roth referring her to other physicians for pain management.

Overall, the record establishes that IDSC's reviewing physicians relied on objective data from the treating physicians such as MRI reports, range of motion assessments, and other tests in reaching their conclusions. It may be that their ultimate conclusions about Hall's degree of impairment differed from those of the treating physicians, but "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Hall suggests that IDSC acted without evidence that her condition improved, but the records tell a different story.

IDSC's prior approval of benefits does not necessarily mean that it was an abuse of discretion to subsequently deny them, as Hall suggests. *See* Dkt. No. 29 at 8. Even in cases

<mark>
<mark>
<mark>

<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

<mark>
<mark>
<mark>
<mark>

involving a more generous *de novo* standard of review, our circuit has concluded that the burden of proving total disability "continues to lie with the plaintiff when disability benefits are terminated after an initial grant." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010); *see also Perez v. Lincoln Nat'l Life Ins. Co.*, 843 F. App'x 57, 59 (9th Cir. 2021) (unpublished) (affirming denial of disability benefits over argument that the "district court failed to give proper weight to the fact that [the Plan] initially granted [Plaintiff] benefits before later terminating them.").

While this is enough to sustain IDSC's decision, other factors lend additional support. Hall was invited to submit additional evidence to IDSC, but did not proffer any. There is no evidence that IDSC failed to consider an SSA benefits award. The record indicates that the SSA denied Hall's claim for social security disability in May 2018, finding she was "not disabled under our rules." AR 361. Hall suggests that IDSC determined in June 2018 that Hall met "the definition of disability under the AT&T Pension Benefit Plan . . . and was therefore eligible for a disability pension, a decision it has never reversed." Dkt. No. 29 at 2. But the record demonstrates that IDSC denied Hall disability pension benefits on May 1, 2019, the same day it terminated her LTD benefits. AR 313; *see also* Dkt. No. 31 at 19.

## CONCLUSION

IDSC did not abuse its discretion in denying Hall's LTD benefits for the period of May 2019 to May 2021. Judgment will be entered for the Plan.

**IT IS SO ORDERED.**

Dated: June 23, 2022

JAMES DONATO
United States District Judge

7